Good morning. May it please the court, my name is Jia Kim, appearing on behalf of Petitioner Appellant Cecilio Gonzalez. Mr. Gonzalez was sentenced to 28 years to life in California State Prison for a victimless regulatory offense that can be committed out of mere forgetfulness. Counsel, I have a lot of sympathy with the position that you're taking. Having to show up so many days after your birthday and re-register, sounds like a lot of time for that. But you probably read my dissent in Morales, where I said, I'm really glad to be on the losing end of this case, but that's what Andrade says. Andrade, all he did was a shoplifting and he got the three strikes. I just don't see how to distinguish this case from Andrade. Sure. Well, in Andrade, the Supreme Court set forth clearly established federal law saying that under the Eighth Amendment, there is a gross disproportionality principle that applies to sentences for terms of years. In Andrade, he had received 50 years to life on two strikes for petty thefts that were felonies. I think the difference between this case... 50 to life for minor shoplifting. Yes. The difference between this case and Andrade becomes evident when you also look at Ewing v. California, which was decided on the same day. That was another three strikes decided by a plurality, or there was a plurality opinion that came up on direct appeal. Was that the one who got some horrendous sentence for passing bad checks or something? That was also a grand theft. That was the stealing of three golf clubs. Ah, another shoplifting. 25 years to life. It was on direct appeal. That was the difference between those two cases. However, in Ewing, the Supreme Court emphasized that felony theft is in itself a serious offense and that California had interests in incapacitating and deterring recidivist property offenders. Recidivists in general, it specifically did mention some empirical evidence about property offenders from committing these offenses over and over. Well, people are scared to death of these sex offenders because they think that they commit them over and over. And this fellow, in fact, does. Mr. Gonzalez committed his sex offense back in 1989 when he was 21. He has two sex offense convictions. They arose from the same incident with the same victim. Do those count as two separate strikes, or do they count as a single strike? They count as two separate strikes, yes. Even though it's the same, it all arises out of the same incident. There were two counts on the same incident? Yes. And they each count as a separate strike? Yes, and both of those, in fact, all of his strikes occurred before California's three strikes law went into effect in 1994. Also, the registration offense, this strike, the final strike, was a misdemeanor until 1995. And the birthday registration requirement wasn't instituted until that time. So the difference is, on the facts of Andrade and Ewing, those look like minor thefts. The Supreme Court emphasized that those were felony thefts. Those weren't totally passive felonies like the no-account check, which in Solon v. Helm, which the Supreme Court found granted habeas relief pre-EDPA for a life sentence in that case, and specifically contrasted that kind of passive crime with the thefts in Andrade and Ewing. I would submit that Mr. Gonzalez's offense, which is a crime of omission, purely, especially under the facts of this case, is something that he had not updated his registration for nine months. He was acquitted at trial of the more serious charge, I would argue, of moving and not telling the authorities. How was it that the California Court of Appeals decision in this case did not really deal with prior decisions in Carmoni and Meeks? Carmoni actually postdated. Oh, Carmoni does come after the California Court of Appeals decision in this case. It was in 2005. Was there no obligation on the part of the California Supreme Court to try and reconcile those two decisions? For some reason, Mr. Gonzalez's petition for review and Habeas Corpus petition were denied. Carmoni came out after Andrade and Ewing. The decision in this case was in 2003, the California Court of Appeals decision that's under review. I believe that was before Andrade and Ewing at the moment. I'm fairly certain because. As I recall, he had recently registered a change of address or registered his address, and the crime here is not re-registering within five days of his birthday. Is that right? Correct. He had been discharged from parole. When you are discharged from parole, you get a notice from the authorities. Wait a minute. I don't want to lose what my question is with an answer to some other question. So he had a duty to re-register within five days of his birthday. Had his address changed between the last time he registered and his birthday? The best evidence we have for that is his acquittal on the failure to register change of address counts. The people's theory was that he had moved at least once, possibly twice, to live with his wife in these two other apartments. His registered address was with his grandmother in Lakeview Terrace. So that is the only evidence we have. So the prosecutor lost on the theory that he left his grandmother's to move back to his wife's. Yes, that's the case. This case is similar also. So what you're saying is the record establishes he had the same address, there was no change of address, and his crime was not such as to leave the prosecutors without an address. It was just not reaffirming that it was his address within five days of his birthday. Yes. But they still had his address. Exactly. There was also a document that Mr. Gonzalez attached to one of his state habeas corpus petitions. It's at 5 ER 777. It is not a registration form per se, but it is an LAPD record that indicates that as of May 2001, after the February birthday had passed, that they had updated information. And, again, it was the Lakeview Terrace address. The grandmother's address is the one he was registered at. It's not exactly a registration form. There was no evidentiary hearing in the district court as to exactly what that form is, but it does appear to be a LAPD record, and it says address Lakeview Terrace, updated May 23rd, or 21st, 2001, which was a year after he had previously registered. Lakeview Terrace is where his grandmother lives? And he was arrested. The street was Foothill Boulevard. He was arrested at the corner of Foothill Boulevard and another street, which the officer who put out the warrant for his arrest said was close to his registered address. He was arrested by officers who knew him personally and recognized him. Within hours, they said they had just come on duty and picked him right up there. So, in addition to the gravity of the offense, I think it's also important to look at the harshness of the sentence. There is an unusual amount of information about plea negotiations in this case. There were two trial judges, one who handled the sort of pretrial matters. How did the plea negotiations help him? Why should we take that? I understand that he was offered two years, which he probably should have taken, and that even if he were to win this case, he might easily end up with a 10- or 15-year sentence, which I think, at least under California's own view of its law, would not be unreasonable at all. It would probably not violate the Constitution. So, at best, how do the plea negotiations help you at all? Well, this court indicated in Reyes v. Brown that the plea negotiations, in that case, though, it was a four-year plea offer, does help support the inference of gross disproportionality. So, I think in that case, it's especially important here because this happened before he was acquitted of the failure to register a change of address. I'm not sure that it does. To me, what it suggests is that the prosecutor felt the same way that I did in Morales, that this is really out of hand, but on the other hand, it's the law. I mean, one of the trial judges did indicate that in these sort of cases, there is often a lot of give and take between the prosecution and the defense. She wouldn't offer one of these deals because the petitioner was pro per at that point, or about to go pro per. You know, I think that the plea negotiations are important just to show sort of that this is a case. The gross disproportionality principle does not have precise contours. However, there is a lot of evidence in this case that this is not a case at the margins, given the nature of the offense, given the lack of harm to society, the lack of culpability, the lack of intent needed to commit this offense, and I think that's part of the record on this. Thank you, Counsel. Even though you've exhausted your time, plan on one minute for rebuttal. Thank you. Good morning, Your Honors. Carl Henry on behalf of the Attorney General of California. Our client in this case is the California Warden at Salinas Valley State Prison. May it please the Court, let me begin by clarifying a few matters that were brought up with my colleague. With respect to the priors in this case, in addition to the attempted rape with force that he pled to in 1989, as well as being the same victim, lewd and lascivious act against a child under the age of 14, there is a third strike in this case, Judge Bobby, and that's the second degree robbery that was committed in 1992. And to flesh that out, just to be very clear about it, that occurred less than a year after he was released on parole, having been in state prison on the lewd and lascivious act. Well, that certainly makes him eligible for a three strikes ruling. The question is under the Eighth Amendment, is whether he can get life for failing to come in within five days after his birthday and tell him he still lives at the same house. Well, that goes to the heart of the question. I mean, the standard is fairly clear, and our position is fairly clear. Our position is this is not an extraordinary case. It's not extremely rare. But what does the state do with Carmoni? Well, I was going to address some of that in terms of the procedural history of that case. That case, much like Ramirez, is a split decision. You have one justice who pointed out that in Meeks, that very court had affirmed a sentence comparable to the sentence in this case. Although it distinguished Meeks on the grounds that in Meeks, the problem was a failure to register a change in address. This was only a technical violation because there was no change in address, and they knew exactly where to take him out. Glad you brought that up because I was going to respond to a question that Judge Carnton felt raised, which is it is true that the jury acquitted the defendant of the charge of having moved without putting out that registration. However, one of the pieces of evidence that the prosecution proffered at trial was two things, a utility bill. This is in my AOB, excuse me, my respondent's brief, page 8, where I cite to the RT to that proposition. But he had a utility, the prosecutor had a utility bill that showed that he moved from the Lane Avenue. How do you expect us to rely on that, counsel? You lost that one. No, no, what I'm saying is this is not a situation much like Carmoni. I don't understand why that proves anything. I still pay some odds and ends of bills for my kids, even though they're in their 30s. My only point on that, Your Honor, is the simple point that, and I have two points on the issue of whether or not this is a passive crime. My point is to distinguish this from Carmoni. Carmoni had a situation where not only was it abundantly clear that the person had never moved, so much so that the probation officer called Mr. Carmoni on his birthday and said, Happy birthday, don't forget to register. This is a situation where despite the acquittal, laboriously, law enforcement had to track this individual down. But he came in, he didn't come in within five days of his birthday, but he did come in to register when he remembered it. No, no, no, that's not this case. This case is a situation where they found him in June after he was required to register and arrested him because he had not, he had not updated his registration beyond the five-day period. His birthday is February 24th. He had until March 1st to do so. He was arrested in June because he never came in. Didn't he come in in May and register again? He did that in May of 2000. He was released on parole after his... I've got in my notes that he registered again on May 21st of 2001. So May 23rd of 2000 and May 21st of 2001. May 23rd of 2000 was when he was released from prison and he registered upon his release. That's correct. Well, it looks like, although this is no excuse for the crime, that he registered within a one-year anniversary of the date on which he was released from prison and had registered. His required registration date for purposes of the law, for purposes of the straight felony in this case, was March 1st. He did not register by that date. That's without dispute. But he did come in and register between the time of his birthday and the time of his arrest? Between the time of his birthday and the... I believe that might be the case. Yeah, I want to find out. I don't think that... Here's his birthday. He's got five days and he misses the five days. Which comes first? He gets arrested or he registers? The birthday is subsequent to, prior to his arrest. I know that, but I asked you something different. I wanted to know if he re-registered at his grandmother's address before he got arrested and after his birthday. I believe, I believe that might be the case. I just don't happen to have my fingertips have that answer. But I do know that by that time, irrespective of the May period, his triggering offense began when he failed to register on March 1st. And I don't want to sidestep the larger issue in this case. Is this an exceedingly rare case? And the answer is no. It's not exceedingly rare for several reasons. For instance, to the extent, and we're discussing it right now, that this is a passive, victimless, non-violent crime, I refer this court to the decision in Taylor. Look, rarity doesn't matter. Disproportionality matters. And on a disproportionality, it may matter whether he came in and registered late but voluntarily before he got arrested. As to whether or not there's an inference of proportionality, the answer is no, for the simple reasons that were proffered both by the district court as well as what I'm offering to the court. Counsel, we are in a really, really awkward position here. I want to tell you why we're in a very awkward position. Because we are bound by the Supreme, we have to look to the Supreme Court, and we have to do that on our own. We have to look at the Eighth Amendment analysis on our own, irrespective of anything that California has done. On the other hand, I think that we are probably bound by how California views its own criminal laws. That is, California can tell us how strongly do we feel about the registration requirement. And the answer that looks out of Carmoni is, not very. We have a California Court of Appeal decision finding that whatever it was in Carmoni, I think it was a 25 to life, on a failure to register within five days of your birthday, is a violation of the Eighth Amendment. Now, that's pretty powerful evidence that California thinks that the failure to register within five days requirement is a mere technicality, and not the equivalent of a property offense or an offense against persons. More powerful, Your Honor, is the fact that in this case, that case, of course, being 2 to 1, more powerful is this case you have. Are we not bound by the 2 to 1? Should we be looking at counting the Supreme Court to make sure the 5-4 decisions don't really count? I would like to continue with the analysis, Your Honor. In this particular case, the California Supreme Court had an opportunity in its petition, in the petition for review, to decide whether or not that was wrong. I've asked this to counsel. I'm completely baffled as to how we can let Carmoni and this decision sit. I think you have a situation where reasonable minds can differ, which brings you back to the ADEPA. Whether or not the decision by the California Court of Appeal in this case was objectively unreasonable, and it was not. It's absolutely, utterly inconsistent with Carmoni. It's not inconsistent, we would submit, for two reasons. Number one, it is equally strong that the California Supreme Court, given the opportunity to grant review in this case, chose not to. That decision, under this circuit's precedent, is a decision on the merits for purposes of the ADEPA. And it's utterly baffling. Equally significant is the dissent in Carmoni, where the dissenter pointed out that that same court earlier, in Leakes, had affirmed a sentence comparable to this sentence. And the distinction, quote, unquote, was whether or not it was a technicality. And to the extent that this is a passive case, this case is no more or as equally passive as the triggering offense in Taylor, where all Taylor did was ride around on a bicycle, got stopped for failing to stop at a stop sign. The police, pursuant to a consensual search, searched him, looked under his baseball cap and found drugs. That's pretty victimless. That's pretty passive. That's pretty nonviolent. That's this case. If they had sent him away for a thousand years because he rode his bicycle through something, but the drugs maybe makes it a different case. It's still passive in that sense. It's still nonviolent in that sense. It fits into the matrix of whether or not this case is exceedingly rare. Was it the same California court of appeal that decided Carmoni and this case? No. Carmoni's division sits. And this case was a different division from the Second Appellate District. And I did want to answer something else. Before you get to whatever else it is, I don't know much about California. Is one court of appeal bound by the decisions of another court of appeal? Absolutely not. That would be the purpose of review being granted from the California Supreme Court. Unless the California Supreme Court takes it and reconciles them, one California court of appeal can ignore the decision of another court of appeal. The seminal test is auto equity 1962 from the California Supreme Court, which basically says that only the decisions of the California Supreme Court, not dicta, I might add, but only their decisions are binding on lower courts in California. So it's kind of like U.S. district judges. Absolutely. They do not have to follow each other. One particular court, even Division 2 of the Second Appellate District, could respectfully disagree with Division 6 of the Second Appellate District. You can have divisions. But, of course, divisions goes to the adepti issue as to whether or not something is objectively unreasonable. You have a situation in this case where the U.S. Supreme Court itself has said its precise contours have been unclear. You have a situation in this case where the California Court of Appeal in this case cited to Justice Kennedy's plurality decision in Hermillan. So this particular court was aware of U.S. Supreme Court precedent. Furthermore, it cited to a state case which cited to Salone. So the California Court of Appeal in this case was aware of Salone. I think Judge Klein is making an excellent point that I would like to further emphasize, which is you have no fracture irreconcilable difference necessarily in this case for purposes of finding gross disparity or, more importantly, an inference of gross disparity. You have one particular set of panelists, two-to-one, saying we just don't see it in this case. You have another group of panelists in this court saying we don't see the violation. And then you have the California Supreme Court later saying we're not going to grant review on that. Counsel, would there be any purpose in this case for the court to consider certification to the California Supreme Court? No. I think because of what I've said and what your... The California Supreme Court doesn't like us? No, but because of what your Honor has said both in this particular oral argument as well as arguments before, today in this, the issue being the adaptive ruling. Did... I didn't know before locking the guy up for life whether California thinks it's a mere technicality or a serious crime. In addition to everything else I've said, the reason why is that it's not exceedingly rare. The only time the U.S. for purposes of clearly established Supreme Court precedent, the only time the California Supreme Court obviously has struck down a sentence was Salone. You just told us it's not rare, and I'm sure you're right. I mean, lawyers miss deadlines, we miss deadlines. The test is exceedingly rare. People miss deadlines, so it must be common. So you think it might be worth the California Court's time? No, not at all. The California Supreme Court was proffered a petition for review in this case. That was the time. I think the rareness doesn't come in the nature of the offense. That would be missing the deadline, but rather in the rareness and the disproportionality of the sentence. That is, if California is just handing these things out like candy, and any time, if California, if the legislature, for example, were to say, failure to register as a sex offender is so important in this case, in this state, it is more important than anything else, that the penalty automatically is life, that we would have to take that into account when we considered the rarity. It wouldn't be rare at all. It would have been designated by the legislature, and the legislature would be telling us how strongly it feels about it. But the California courts are telling us this is a mere technicality. It's a regulatory failing. Your Honor, I'm perplexed by your question, only because we're in an adept posture. Judge, I'm quoting out of harmony. We're in an adept posture whereby what this court, much like the district court in California Central District was supposed to do, was measure, mirror up. The California Court of Appeal decision in this case, compare it to U.S. Supreme Court clearly established precedent, a precedent where in Andrade they said our contours have been unclear. Well, this is what I explained to you, counsel. We're in a very funny posture here because we're going to apply a de novo to the Eighth Amendment question. But it seems to me that we are bound in some respect by what California has, how California has characterized its own laws. And on that, we are left here with these two decisions that seem utterly irreconcilable. I don't know what to do with them. Three justices of this panel in this case who found it one way. You have seven members of the California Supreme Court given the opportunity, chose not to grant review in this case versus two justices in harmony who came down one way and a dissenting justice who not only came down a different way, but pointed out that same court in Meeks had gone a different way. If we're counting court of appeals judges, you're right. You win four to two. But I'm not sure that we get to aggregate them in that way. I'm just saying that the test is whether or not it was objectively unreasonable. And when you've got four plus seven on one side of the ledger versus two justices adding the dissent in harmony to this, you've got now what, 12? Thank you, counsel. Versus two, you don't have that strangeness that Your Honor seems to be so concerned with. Thank you, counsel. I might just address a couple points. First on the question of exceedingly rare and what we mean by that. I think Judge Bidey is correct in that exceedingly rare, we have to look at whether their sentences have been imposed under the three strikes law for this particular offense, for failing to comply with the birthday registration requirement. For that, we have Carmoni. We also have, by implication, this wasn't the issue on appeal, the California Supreme Court decision in Barker, which was 2004, which occurred after Mr. Gonzalez's case. The question there was whether mere forgetfulness was enough to violate the statute, which the California Supreme Court held it was. If you look at the facts of that case, Mr. Barker received a nine-year sentence. He had ten prior strikes. Nine of those strikes were struck or dismissed by the trial court. They included two rapes and one attempted rape of elderly women. Those are sort of the data points we have on exceedingly rare. I have not seen any other case out of California or another state in which a similar sentence has been imposed for this technical offense. Thank you, counsel. Thank you.
judges: Canby, Kleinfeld, Bybee